S. LANE TUCKER
United States Attorney

JACK S. SCHMIDT
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
709 West 9th Street, Room 937
Post Office Box 21627
Juneau, Alaska 99802
Phone: (907) 796-0400
Email: jack.schmidt@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GLENDA TIGLAO RODRIGO d.b.a. ALASKA STONE ARTS, LLC, RAIL CREEK LLC, AND RODRIGO CREATIVE CRAFTS,<br><br>Defendant. | No. 1:23-cr-00003-002-TMB-MMS |

**UNITED STATES SENTENCING MEMORANDUM**

<u>**SUMMARY OF SENTENCING RECOMMENDATIONS**</u>

**TERM OF IMPRISONMENT** ................................................................................ **None**

**SUPERVISED RELEASE** .........................**5 Years of Probation w/ Special Conditions**

**FINE**................................................................................................................... **$50,000**

**SPECIAL ASSESSMENT** ................................................................................ **$200.00**

The United States Probation Office ("USPO") has prepared a presentence investigation report ("PSR") in this case. The United States agrees with the factual findings of the USPO.

I. **BACKGROUND**

CRISTOBAL "CRIS" MAGNO RODRIGO ("C.M. RODRIGO") is a trained stone carver who has worked in the Alaska in different stores and shops producing stone carvings for the tourist trade in Southeast Alaska and elsewhere for over 20 years. In 1998, C.M. RODRIGO went to the Philippines to train stone carvers to carve in Alaska Native designs and styles. C.M. RODRIGO's wife, GLENDA TIGLAO RODRIGO later join her husband in his carving business occasionally helping with sales but was mainly responsible for the overall management of the business and running the day-to-day operations. In 2003, GLENDA TIGLAO RODRIGO ("G.T. RODRIGO"), opened and operated RODRIGO CRATIVE CRAFTS (RCC) in the Philippines, a business created solely to produce stone carvings and later wood totem poles in Alaska Native designs and styles that were taught by C.M. RODRIGO. Beginning in March of 2016, C.M. and G.T RODRIGO jointly opened and operated ALASKA STONE ARTS, LLC. and RAIL CREEK, LLC. located in Ketchikan, Alaska. RAIL CREEK, LLC. exclusively sold wood totem poles produced by RCC, and ALASKA STONE ARTS, LLC mainly sold stone carvings produced by RCC.

In 2017, CHRISTIAN RYAN TIGLAO RODRIGO ("C.R. RODRIGO"), the son of C.M. and G.T. RODRIGO, was an employee of both ALASKA STONE ARTS, LLC

and RAIL CREEK, LLC. who assisted in sales and with G.T. RODRIGO's day-to-day operation of both store locations in Ketchikan, Alaska, including while located outside of Alaska. All three are of Filipino decent and conspired, with each other and others, to design stone carvings and wood totem poles in the style of Alaska Native designs or styles, manufactured in the Philippines with Filipino labor; import the stone carvings and wood totem poles and display, advertise, and sell the stone carvings and totem poles to customers based on false representations that the stone carvings and totem poles were made by Alaska Natives or members of an American Indian tribe.

The underlying scheme that the RODRIGO's employed was to tell unsuspecting buyers that the RODRIGO's and their employees were a local Tlingit family that sourced their stone from Prince of Wales Island and sourced their totem poles from locally source wood. The RODRIGO's hired Alaska Native and non-Alaska Native employees for both stores, who joined the scheme to defraud customers, telling customers that they were all family working in the store and all stone and wood carvings were produced from locally sourced materials and made by Alaska Natives who had learned their craft from the Tlingit master carver "Kilit," who was C.M. RODRIGO. The scheme involved the production of the stone carvings and wood totem poles in the Philippines and importing those carvings engraved with artist names of employees working at the stores as part of the production process. C.M. RODRIGO was engraved as "Kilit," C.R. RODRIGO was "Ryan" or "Я R," S.P.C was engraved as "Simeon," C.T.L. was engraved as "Cameron," J.H.R. was

engraved as "jr," and T.L.M. sold stone carvings under the previously identified artists names and worked exclusively at RAIL CREEK, in which he signed wood totem poles representing himself as the artist who carved them.

During the course of the conspiracy, the defendant and others involved in the scheme sold hundreds, if not thousands of stone and wood carvings as authentic produced Alaska Native carvings when they were not. In 2019 and for part of 2021, G.T. RODRIGO conspired with employees at ALASKA STONE ARTS and RAIL CREEK, fraudulent sold over $1,000,000.00 in Philippine made carvings to unsuspecting customers representing them as authentic Alaska Native carvings in violation of the Indian Arts and Crafts Act.

## II. GUIDELINE APPLICATIONS

The USPO has calculated that the defendant has a total offense level of 17 and a criminal history category of I, with an advisory guideline range of 24 to 30 months. The government agrees with this calculation; however, the parties agree that the defendant as part of the agreement with the United States, that no jail time will be served and will be placed on probation for five years. The defendant raises no objections to the USPO's calculation of his guideline offense level.

### A. Criminal History Category

The USPO has found that the defendant is in criminal history category I based on his lack of criminal history. The United States agrees with this finding.

## III. APPLICATION OF 18 U.S.C. § 3553(a)

Application of the factors set forth in 18 U.S.C. § 3553(a) supports the imposition of a sentence of five years of probation and the agreed upon fine of $50,000 and the $10,000 donation to the IACB and the proposed special condition of probation in this case are as follows:

1. The defendant shall draft for the government's approval a letter of apology expressing remorse for his actions that led to this action and conviction. She shall submit such letter, once approved by the government for publication in the local Ketchikan newspaper at his cost for two weeks.

### A. The Serious Nature of the Offense

The Indian Arts and Crafts Act ("IACA") is a truth in advertising law to ensure that products sold by merchants are accurately reported as what they are. In Alaska, Indian artwork is a multi-million-dollar industry, as exhibited in this case. The sales involved in this case are over one million dollars for the majority of that fraud occurring in 2019. Those who misrepresent this artwork, make hundreds of thousands to millions of dollars on artwork that cost mere pennies on the dollar creating huge profits for unscrupulous business owners, and diminishing the sales of legitimate Alaska Native artisans.

Here, the RODRIGO's established a sophisticated closed supply chain to produce large quantities of fake Alaska Native products to fill their stores for their unsuspecting customers. Moreover, RODRIGOs and others established a sophisticated scheme in their

stores to sell those items to unsuspecting customers. Those products were produced for pennies on the dollar. A 40ft container would be filled with stone and wood carvings and imported to the United States for $200,000 and medium sized stone carving measuring 1ft x1ft can be sold for between $2,000.00 to $3,000.00 each and larger carvings for up to $10,000.00 each and wood totem poles sold on average for a $1,000.00 per linear foot. The containers shipped contained thousands of items for sale for RODRIGO's stores.

The defendants conspired here to misrepresent non-Alaska Native artwork as authentic Alaska Native artwork. This type of deception creates consumers mistrust for legitimate businesses in Alaska and elsewhere and also gives an unfair advantage to fraudulent business and others like it, who are willing to falsely suggest non-Indian as authentic Indian artwork over those who engage in honest in their business practices. This practice takes away legitimate business who create or sell authentic Alaska Native artwork because they cannot compete against lower priced knock offs. This type of offense essentially steals food off of the table of Alaska Natives, who spend countless hours producing their goods for the market, only to have them undercut by fake artwork. Moreover, the offense significantly damages legitimate businesses and artisans by taking away customers who seek authentic artwork from them, because of the low overhead, businesses who sell fake art can easily out price those who produce authentic Alaska Native artwork. The seriousness of this type of fraud cannot be underestimated and as it goes beyond defrauding customers, it effects legitimate business, Alaska Native artisans, and the overall industry itself. The seriousness of this offense must be reflected in the

underlying sentence that the defendant receives for a violation of this law and justifies the agreed upon sentence between the parties.

B.     **General Deterrence – Respect for the Law**

This case presents the Court with an opportunity to deter this type of behavior within Southeast, throughout the rest of Alaska, as well as, in the United States. These cases are highly publicized and general deterrence is one of the proscribed goals of every sentencing, but it occupies an especially important role in sentencing for fraud cases such as this case.

To the government's knowledge, the number of cases brought over the years and recently in Southeast Alaska demonstrates the need to deter other business from engaging in such behavior. A felony conviction, five years of probation, and a fine of $50,000, with a $10,000 donation to the IACB is a moderate fine given the gravity of the offense and money made during this fraudulent scheme. The RODRIGO's made hundreds, if not, millions of dollars during the course of this scheme. If a fine is not imposed, there will be no real punishment, nor deterrence at all in this case for this serious economic crime. The defendant committed this type of offense because of greed. These types of cases have attracted a lot of media attention as they are prevalent in Alaska and throughout the U.S., given the amount of money that can be made from the sale of authentic as opposed to unauthentic Alaska Native and American Indian styled artwork. This case presents the Court with a significant opportunity to instill compliance throughout Alaska and the United States.

//

### C. Specific Deterrence of the defendant from Further Crimes

Another important goal of criminal sentencing is to protect the public "from further crimes of the defendant." 18 U.S.C. Sec. 3553(a)(2). The defendant was a person who should have known better and clearly knew that this conduct was wrong. Probation has suggested that a fine is inappropriate in this case, however, disgorging the defendant of some portion of her ill-gotten profits is an important aspect of specific deterrence. The defendant's majority of the business was selling unauthentic Alaska Native artwork, that were priced from hundreds to tens of thousands per piece. Many of these pieces, cost mere cents on the dollar creating a huge profit margin. Moreover, the defendant has been provided COVID-19 financial assistance, due to the lack of a cruise ship season. The type of sentence needed to deter this type of conduct a jail sentence and typically a sizable fine and conditions of probation, restitution to the Indian Arts and Crafts Board, and specifically special conditions of probation that are designed to ensure that the defendant will not commit this again in the future. Furthermore, a period of five years of probation is needed, in order to ensure that the defendant does not get back into business defrauding customers. The fine, restitution to victims, donation to the IACB and five years of probation meet that goal.

### D. Avoiding Sentencing Disparity

Title 18 U.S.C. § 3553(a)(6), provides that one of the factors to be considered in sentencing is "the need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. Here, the defendant has

a similar sentencing range as many of the other defendants prosecuted for this offense, that is, each faced the same fine range of $10,000 to $95,000. Here, the defendant accepted responsibility for her actions and admit that she had violated the law and has accepted a felony conviction. As a result of this, the government is recommending a smaller fine than what her overall fraud. The defendant was engaged in this scheme for decades before the undercover operation took place revealing this fraudulent business practice after repeated complaints from customers that they were defrauded by the defendant and her businesses. Furthermore, the government has agreed to not seek a jail sentence against her and her son.

### E. Imposition of a Fine

A fine in this case is sufficient, as it disgorges from the defendant of a very small portion of the monetary gain she received from the illegal conduct and this sentence recommendation a sufficient punishment in this case. The government submits the agreed upon $50,000 fine is appropriate in this case.

### V. CONCLUSION

Thus, based on the arguments made above, the United States recommends the defendant be sentenced to five years of probation, the imposition of a $50,000 fine and restitution to victims, donation to the Indian Arts and Crafts Board in the amount of $10,000, and the agreed upon special conditions of probation. A two-hundred-dollar special assessment is mandatory.

//

//

RESPECTFULLY SUBMITTED August 17, 2023 at Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

/s JACK S. SCHMIDT
JACK S. SCHMIDT
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2023 a true and correct copy of the foregoing was served electronically on all counsel of record.

/s JACK S. SCHMIDT